## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MERSEN USA EP CORP., <br><br>                     *Plaintiff*, <br><br>    v. <br><br> TDK ELECTRONICS INC. and <br> TDK (ZHUHAI FTZ) CO., LTD., <br><br>                *Defendants*. | Civil Action No. <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Mersen USA EP Corp. ("Mersen"), by and through its undersigned attorneys, as and for its Complaint against Defendants TDK Electronics Inc. ("TDK Electronics") and TDK (Zhuhai FTZ) Co., Ltd. ("TDK Zhuhai") (collectively "Defendants" or "TDK"), alleges as follows:

## NATURE OF THE ACTION

1.      This action arises from acts of misappropriation of trade secrets and unfair and deceptive trade practices by Defendants, including Defendants' misappropriation of Plaintiff's trade secrets to release a competing commercial product, and Defendants' engagement in bad faith retaliatory pricing in an effort to dissuade Mersen from pursuing its claims in another lawsuit.

2.      Mersen manufactures and sells unique metal oxide varistors ("MOV") that are thermally protected. Thermally protected MOVs are used as an overvoltage protection component in power supply circuits in a variety of devices and applications.

3.      Mersen's thermally protected MOV products incorporate a MOV component, which is manufactured by TDK Zhuhai and in turn sold to Mersen in Massachusetts by TDK Electronics.  Thus TDK Zhuhai and TDK Electronics are suppliers to Mersen.  The MOV provides overvoltage protection.  Components that Mersen adds to the MOV provide thermal protection and unique packaging.

4.      Upon information and belief, TDK Electronics and TDK Zhuhai are affiliates that are directly or indirectly wholly owned by the same company, TDK Corporation.

5.      In July 2016, a Mersen customer experienced a catastrophic failure of its thermally protected MOV, which upon investigation was determined to be caused by the MOV component manufactured by TDK Zhuhai.

6.      TDK Zhuhai was initially unable to identify why its MOV component was failing. Thus, to further assist TDK Zhuhai's diagnosis of the issue, TDK Zhuhai requested that Mersen disclose extensive confidential information, including the complete design of Mersen's thermally protected MOV and how it was being integrated into the products of Mersen's customers.

7.      TDK Electronics helped facilitate the exchange of confidential information between Mersen and TDK Zhuhai.  Relative to this information exchange, TDK Zhuhai controlled and (in many instances) acted through TDK Electronics.

8.      Effective December 1, 2016, Mersen and TDK Electronics entered into a Non-Disclosure Agreement (the "NDA") for the express purpose of protecting the confidential information that Mersen was disclosing to Defendants to resolve the failures of TDK Zhuhai's MOV component.  At the time the NDA was executed, Mersen did not understand the corporate distinction between TDK Electronics and TDK Zhuhai and relied on Defendants to identify the correct entity to sign the NDA.  As described in greater detail herein, TDK Electronics and TDK

4858-0901-1810, v. 8

Zhuhai were both aware of, assented to, and understood that they were bound by strict confidentiality obligations and the NDA and that information they received from Mersen under the NDA was confidential and proprietary information of Mersen.

9.      After entering into the NDA, Mersen provided Defendants with confidential and trade secret information (identified in detail herein) in writing, telephonically, and in person. Among other things, representatives from both TDK Electronics and TDK Zhuhai visited Mersen's facilities in Massachusetts.  All confidential information was provided by employees of Mersen USA EP Corp., which is located in Newburyport, Massachusetts.

10.     Although prohibited by the NDA, Defendants knowingly misused Mersen's confidential information and misappropriated Mersen's trade secrets to develop a competing thermally protected MOV product that incorporates the unique reliability features of Mersen's thermally protected MOV.

11.     On January 27, 2021, pursuant to a mandatory forum selection clause in the NDA, Mersen commenced litigation against TDK Electronics and TDK Zhuhai in New York state court alleging breach of contract, unfair competition and unjust enrichment, which TDK removed to the U.S. District Court for the Southern District of New York, docket number 1:21-cv-00763-MKV-RWL (the "SDNY Litigation").  On March 28, 2022, TDK Zhuhai was dismissed from the SDNY action without prejudice for lack of personal jurisdiction.

12.     In or about September 2022, TDK and Mersen, through their respective Massachusetts representatives, negotiated and agreed to a price freeze on all TDK products purchased by Mersen through January 1, 2024.  The price freeze allowed for a 5% price increase over 2022 levels.

13.     During a meet and confer on April 19, 2023 among counsel in the SDNY litigation, Mersen's counsel informed TDK's counsel that Mersen would be seeking to file a motion for sanctions based on TDK's egregious discovery violations in the SDNY action.  On April 25, 2023, despite the long-standing price freeze agreement and in obvious retaliation for the sanctions application, a TDK Massachusetts representative notified a Mersen Massachusetts representative of an 18% price hike on certain products Mersen purchases from TDK.  On May 3, 2023, TDK informed Mersen that its retaliatory price hike was extended to all products Mersen purchases from TDK.

14.     Meanwhile, upon information and belief, TDK is currently offering its competing products (developed using Mersen's confidential and trade secret information) to Mersen's customers at lower prices.

15.     Upon information and belief, TDK Zhuhai instructed TDK Electronics to issue the retaliatory price increase.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over Mersen's Defend Trade Secrets Act ("DTSA") claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Mersen's state law claims pursuant to 28 U.S.C. § 1367.

17.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interests and costs.

18.     This Court has personal jurisdiction over Defendants in this action pursuant to M.G.L. c. 223A, § 3 because, among other things, Defendants, directly or through agents, transact business within the Commonwealth of Massachusetts, including with Mersen; contract to supply services or things in the Commonwealth of Massachusetts, including with Mersen;

have visited Mersen's facility in Newburyport Massachusetts and are causing tortious injury by an act or omission in the Commonwealth of Massachusetts, including through its misappropriation of trade secrets and unfair and deceptive trade practices as alleged herein; and are causing tortious injury in the Commonwealth of Massachusetts by acts or omissions outside of Massachusetts while regularly conducting and soliciting business in Massachusetts.

19.     TDK Electronics and TDK Zhuhai repeatedly and intentionally reached into Massachusetts to obtain Mersen's confidential and trade secret information through in-person visits, telephone calls and emails over a period of one and a half years.  While taking Mersen's confidential and trade secret information from Massachusetts, TDK (unbeknownst to Mersen) knowingly used the same in violation of the NDA to develop a competing product and thereafter competed against Mersen.

20.      In 2022, TDK and Mersen negotiated the price freeze in Massachusetts for all products Mersen purchases from TDK in 2023.  In retaliation for Mersen's request for sanctions in the SDNY litigation for TDK's egregious discovery violations, TDK Zhuhai and TDK Electronics in concert and, acting through its Massachusetts representatives, instituted an across-the-board price hike for all MOV products Mersen purchases from TDK.  Substantially all MOV products subject to the retaliatory price hike are ordered from Mersen in Massachusetts through its Massachusetts representatives.

21.     In the alternative, this Court has personal jurisdiction over the Defendant TDK Zhuhai pursuant to Federal Rule of Civil Procedure 4(k)(2) because: (i) Mersen brings a claim arising under federal law, namely its DTSA claim; (ii) TDK Zhuhai is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (iii) as alleged throughout this Complaint, TDK Zhuhai has sufficient minimum contacts with the United States as a whole

such that the Court's exercise of jurisdiction over TDK Zhuhai satisfies Due Process. Specifically, and as alleged more fully herein, TDK Zhuhai markets and sells its products throughout the U.S., contracts to supply goods and services throughout the United States, and visited Mersen and other customers in the United States to promote and develop its products, and engaged in bad faith retaliatory pricing in the United States.

22.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Commonwealth of Massachusetts.

## THE PARTIES

23.     Plaintiff Mersen is an Ohio corporation with its principal place of business at 374 Merrimac St., Newburyport, Massachusetts 01950.

24.     Defendant TDK Electronics is a Delaware corporation with its principal place of business at 485-B Route 1 South, Suite 200, Iselin, NJ 08830.  TDK Electronics was previously known as EPCOS, Inc. ("EPCOS").  TDK Electronics is registered with the Secretary of the Commonwealth of Massachusetts to conduct business in Massachusetts and, upon information and belief, operates an office in North Easton, Massachusetts.

25.     TDK Electronics sells electronic components in the United States, including MOV products. TDK Electronics has no manufacturing capabilities.

26.     Upon information and belief, TDK Zhuhai is a company organized and existing under the laws of the People's Republic of China with a principal place of business in Zhuhai City, China.

27.     TDK Zhuhai manufactures electronic components and, together with TDK Electronics, those products are marketed and sold into the U.S. market.  One of these components is the MT30 product.

28.     Upon information and belief, and according to TDK's corporate disclosure statement filed in the SDNY Litigation pursuant to Fed. R. Civ. P. 7.1, TDK Electronics and TDK Zhuhai are wholly owned, directly or indirectly, by the same company.

29.     TDK Electronics and TDK Zhuhai have recently begun to offer a thermally protected MOV product designated as the MT30.

## FACTS

### Mersen's Business and Products

30.     Mersen is a global expert in electrical power and advanced materials.  Mersen designs innovative solutions to enable its clients to optimize their manufacturing performance in sectors such as energy, electronics, transportation, chemicals, pharmaceuticals and process industries.

31.     Mersen is part of a larger global Mersen group with locations around the world, including sixteen research and development centers and fifty-five industrial sites in thirty-five countries.

32.     Mersen is an architect of integrated solutions. Mersen makes specific components suitable for high power applications that can be integrated into specific architecture such as, for example, photovoltaic, power surge device applications that require Underwriter Laboratories ("UL") approval and are subject to home use controls issued by the National Electrical Code ("NEC").

33.     Mersen's thermally protected MOV family of products eliminates common destructive failure modes associated with standard MOVs.  One failure mode eliminated by Mersen's thermally protected MOV family products is thermal failure, *i.e.*, fire.

34.     MOVs are components of thermally protected MOVs. MOVs have rated voltages and conduct large electrical currents when presented with a voltage surge that is above their rated voltage.

35.     Thermally protected MOVs include a voltage clamping device and a disconnecting apparatus that disconnects the device in the event of an overvoltage (as described in further detail below).

36.     Mersen considers the engineering details of its thermally protected MOV products to be non-public confidential information.  Mersen considers certain information regarding its thermally protected MOV products to be Trade Secrets.

37.     Mersen's thermally protected MOV products are industry leading and include a design that has best in class performance compared to its competitors.

38.     The best-in-class performance of Mersen's thermally protected MOV products is a result of investment into and development of confidential and trade secret information that provides Mersen with economic value by not being publicly available.

39.     Mersen's trade secret information is not readily available and provides Mersen best in class performance and a unique market position with respect to its thermally protected MOV products.   Mersen often is invited to collaborate with its customers and potential customers in the development of new products that its customers may offer, where those products may benefit from Mersen's thermally protected MOV products.

40.     Mersen considers its customer collaborations to be confidential and enters into non-disclosure agreements for such collaborations.

41.     UL issues product safety standards.  Products that meet the relevant standards are eligible to be UL listed, which gives the manufacturer of the products significant market advantage.

42.     Mersen obtains UL listings for its thermally protected MOV products.

43.     Mersen's thermally protected MOV products are sold to companies that manufacture, among other things, surge protection devices.

44.     Mersen's customers obtain UL listings for their surge protection devices.

45.     One of Mersen's thermally protected MOV products uses a 34mm MOV. Mersen's 34mm thermally protected MOV is used primarily in commercial and industrial applications.

46.     Mersen purchases the 34mm MOV from TDK Electronics.

47.     The 34mm MOV sold to Mersen is manufactured by TDK Zhuhai.

**Mersen's Confidential and Trade Secret Information**

48.     Prior to misappropriating Mersen's confidential and trade secret information, Defendants did not materially compete against Mersen.  Rather, Mersen and Defendants manufactured and sold different products and operated in different trade channels.

49.     In addition, prior to misappropriating Mersen's confidential and trade secret information, Defendants did not provide a thermally protected MOV with an approval from UL.

50.     Mersen has substantial confidential technical information that it uses to develop its thermally protected MOV products, including: design details of product components, exact materials and their composition; the identities of its other vendors; critical characteristics for each component and the overall design; key design features of its thermally protected MOV; and information relating to the processes Mersen used to make its thermally protected MOV, including how to integrate the TDK MOV into the Mersen thermally protected MOV.  Mersen's

confidential information included confidential information relating to its screening (i.e., testing) processes to ensure acceptable performance of the thermally protected MOV products.   This confidential information is hereinafter referred to as Mersen's "Confidential Technical Information."

51.     As it relates to this case, Mersen's Confidential Technical Information includes two central elements of its thermally protected MOV product/design, the first of which comprises Mersen's trade secret information.

52.     The first central element of Mersen's Confidential Technical Information relates to the specific trade secret electrical requirements of an MOV within Mersen's thermally protected MOV design, which is not found in any public standard and is unique to Mersen's thermally protected MOV products (the "MOV Requirements").[1]

53.     Mersen's trade secret requirements are difficult to reverse engineer.  TDK was incapable of reverse engineering Mersen's trade secret MOV Requirements.  Mersen's trade secret MOV Requirements provide significant financial value and competitive advantage to Mersen in the marketplace by not be publicly available.  Mersen takes great efforts to keep its trade secret MOV Requirements confidential.  Mersen's reasonable steps to protect confidentiality include, but is not limited to, restrictions on the number of Mersen employees who have access to the trade secret MOV Requirements.  These employees are bound by confidentiality obligations to Mersen.  Visitors to Mersen's facilities are restricted and are escorted upon mandatory sign-in.  Mersen's computers are all password protected, and where

---

[1] The details of the MOV Requirements were fully disclosed to TDK in the SDNY Litigation and are subject to a protective order in that case.  The above description of the MOV Requirements and surrounding factual allegations, combined with TDK's receipt of the specific details of the MOV Requirements in the SDNY Litigation, are more than sufficient to provide TDK with notice of what Mersen claims comprises its trade secrets.  Upon request, Mersen is prepared to provide this Court with documents sufficient to show the specifics of the MOV Requirements under seal, with a copy to TDK under a duly executed protective order.

4858-0901-1810, v. 8

Mersen contemplates sharing confidential information outside the company, Mersen enters into non-disclosure agreements, such as the NDA with TDK.

54.     Another element of Mersen's Confidential Technical Information relates to the thermally protected MOV's disconnection system.  Mersen's Confidential Technical Information provides a uniquely reliable disconnect function.  Thermally protected MOVs include a voltage clamping device and a disconnecting apparatus that monitors the status of the metal oxide disk inside the thermally protected MOV.  Part of the clamping device and disconnecting apparatus includes an arm connected to the MOV with a low-melting alloy at a specific angle.  The device is securely disconnected in the event of an overvoltage when the corresponding large current causes the solder to melt, thereby releasing the arm, which in turn allows springs to isolate the MOV with an arc shield.  While certain information concerning Mersen's disconnection system used is included in Mersen's publicly available specifications, the solder type, solder amount, reasons for solder placement, solder temperature, spring angles and spring forces, are confidential and not publicly available (the "Disconnection Elements").

55.     Mersen's Confidential Technical Information is not readily available to Mersen's competitors or vendors, including Defendants.

56.     Mersen's Confidential Technical Information is valuable to Mersen.  In particular, Mersen's Confidential Technical Information allows Mersen to have a product that is substantially more reliable and less complex than its competitors.

57.     Mersen takes reasonable steps to maintain the confidentiality of its Confidential Technical Information, including but not limited to, restrictions on the number of Mersen employees who have access to its confidential information.  These employees are bound by confidentiality obligations to Mersen.  Visitors to Mersen's facilities are restricted and are

escorted upon mandatory sign-in. Mersen's computers are all password protected, and where Mersen contemplates sharing confidential information outside the company, Mersen enters into non-disclosure agreements.

### TDK Electronics' MOV Causes Mersen's thermally protected MOV to Catastrophically Fail

58.     In July 2016 Mersen was informed by a customer that certain Mersen thermally protected MOV products had catastrophically failed.

59.     The failure of Mersen's thermally protected MOV was catastrophic insofar as the device caught on fire and destroyed the surge protection device into which the thermally protected MOV was incorporated.

60.     A picture of the failure is illustrated below.



61.     Mersen and its customer duplicated the failure and concluded that the July 2016 failure of its thermally protected MOV were due to a defective MOV sold to Mersen by TDK Electronics.

62.     On July 21, 2016, Mersen informed TDK Electronics of the failure.  The same day, TDK Electronics requested that Mersen return the units.

63.     TDK Electronics in turn engaged its "factory" in China to control the process of how the failures would be addressed.  Mersen has since learned that the "factory" in China is TDK Zhuhai.

64.     TDK Zhuhai controls all manufacturing, research, and development of the MOVs sold by TDK Electronics.

65.     Defendants informed Mersen that they would solve the problem with its MOVs causing the catastrophic failures.

66.     In August 2016, Mersen, TDK Electronics and TDK Zhuhai had a meeting where TDK Zhuhai shared information relating to its processes for testing its MOV products.  TDK Zhuhai's methods revealed to Mersen that TDK Zhuhai did not understand why its MOV products were failing in Mersen's thermally protected MOV.

67.     In August 2016, TDK Electronics requested that MOV samples "be sent back to Epcos for evaluation."  By "Epcos," TDK Electronics was referring not to itself, but rather TDK Zhuhai.

68.     In September 2016 and October 2016, TDK Electronics repeatedly referred to TDK Zhuhai as its China team or its "factory."  As detailed herein, TDK Electronics' communications with Mersen suggested that TDK Electronics and TDK Zhuhai were the same entity.

69.     In or around October or November 2016, TDK Electronics informed Mersen that its "factory" could not solve the problems with its MOVs without receiving more information, including (i) how Mersen was using and intended to use the MOV products, and (ii) details about the design of Mersen's thermally protected MOV.

70.     Based on TDK Zhuhai's request for Mersen's confidential information, in or around October or November 2016, Mersen requested a non-disclosure agreement under which Mersen would provide the factory in China (*i.e.*, TDK Zhuhai), through TDK Electronics (at that

time, EPCOS), with confidential information to enable TDK Zhuhai to solve the quality problem with the MOVs.

71.     Mersen (through its predecessor Mersen USA Newburyport-MA, L.L.C.) and TDK Electronics (through its predecessor EPCOS) entered into the NDA effective December 1, 2016.  TDK Electronics agreed to bind any TDK affiliate who received Mersen's Confidential Information.  A copy of the NDA is annexed hereto as Exhibit A.

72.     Prior to the effective date of the NDA and upon information and belief, TDK Zhuhai instructed TDK Electronics to assist in obtaining confidential and trade secret information from Mersen.

73.     Mersen would not share confidential and trade secret information absent execution of the NDA.

74.     TDK Electronics is primarily a sales office and lacked the knowledge and resources to assess and solve the problem with TDK Zhuhai's MOV component.

75.     Each of Mersen, TDK Electronics and TDK Zhuhai were aware that only TDK Zhuhai had the technical resources to solve the problem with TDK Zhuhai's MOV component. TDK Zhuhai was aware that Mersen would not share the confidential information TDK Zhuhai sought before the NDA was executed.  The NDA had no purpose other than to protect the confidential information that TDK Zhuhai was requesting Mersen disclose.  TDK Zhuhai controlled TDK Electronics relative to the information that TDK Zhuhai sought and Mersen disclosed under the NDA.

76.     TDK Electronics had both actual and apparent authority to act on behalf of TDK Zhuhai relative to the information that TDK Zhuhai sought and Mersen disclosed under the NDA.

77.     At the time the NDA was executed, TDK Zhuhai knew it would be the primary beneficiary and recipient of all Confidential Technical Information that Mersen would provide pursuant to the NDA.

78.     Achim Buecklers executed the NDA and is identified as President and CEO of EPCOS, Inc. (now TDK Electronics).

79.     The purpose of the NDA is identified as:

### 1.      Purpose of the Agreement

The Parties intend [to] enter into [a] relationship for resolving quality issues, improvements in the design of custom made MOVs for Mersen and improvements in the manufacturing process and performance characteristics of MOVs.  In this regard, Mersen will have to disclose to Company information of a strictly confidential and proprietary nature in relation, without limitation, to its products, technologies and business under the terms and conditions defined hereafter.

For the purpose of this Agreement, Company commits to make use of the confidential information solely for the following Authorized Purpose:

**Design, Manufacture and improvements of MOVs supplied to Mersen**
Notwithstanding the foregoing, no provision of this Agreement shall be construed as an obligation for Mersen to disclose to Company any Confidential Information and/or to enter into any further business or binding commercial agreement.

80.     Again, each of Mersen, TDK Electronics and TDK Zhuhai were aware that only TDK Zhuhai had the technical resources to solve the problem with the TDK Zhuhai's MOV component, that TDK Zhuhai would be testing the products on behalf of TDK Electronics, and that TDK Electronics and TDK Zhuhai had a duty to keep Mersen's confidential and trade secret information confidential.

### Mersen's Disclosure of Confidential Information to Defendants

81.     On December 6, 2016, just five days after execution of the NDA, senior executives from TDK Zhuhai and TDK Electronics traveled to Mersen's facility in Newburyport,

Massachusetts, in person for the sole purpose of obtaining Mersen's confidential and trade secret information.

82.     TDK Electronics was aware of the NDA before their representatives arrived at Mersen's Massachusetts facility to receive confidential and trade secret information.  TDK Electronics had an obligation to ensure that TDK Zhuhai was aware of the NDA before the meeting at Mersen's Massachusetts facility.

83.     In advance of the meeting, TDK Zhuhai circulated an agenda, dated December 6, 2016 wherein, among other things, TDK Zhuhai asked Mersen to make a presentation detailing Mersen's entire thermally protected MOV design.

84.     The agenda bears a TDK heading and references TDK Zhuhai.

85.     The senior executives from TDK Zhuhai signed into Mersen's Massachusetts facility for the meeting.

86.     At the outset of the December 6, 2016 meeting in Massachusetts and before Mersen shared any trade secret or confidential information, Mr. Roy Ball of Mersen confirmed that all disclosures made at the meeting would contain Mersen's confidential and trade secret information and would be covered by the NDA.  It was clear from both the circumstances leading up to the meeting and Mr. Ball's announcement at the meeting's outset that TDK Zhuhai and TDK Electronics were aware of, assented to, and understood it would be receiving confidential and trade secret information.

87.     At the December 6, 2016 meeting in Massachusetts, Mersen disclosed to TDK Electronics and TDK Zhuhai its Confidential Technical Information, which includes its trade secret MOV Requirements, as well as details concerning Mersen's confidential testing protocols and confidential Disconnection Elements.

88.     In the meeting minutes, TDK Electronics' Massachusetts representatives requested, on behalf of TDK Zhuhai and, that Mersen provide TDK Zhuhai with additional Confidential Technical Information, including confidential information regarding Mersen's test setup and product release test data.

89.     TDK Electronics further requested weekly telephone calls with TDK Zhuhai so that Mersen could provide additional confidential and trade secret information from its Massachusetts office to TDK Zhuhai.

90.     At least from December 2016 through June 2018, representatives from Mersen's Massachusetts office regularly communicated with TDK via in-person meetings in Massachusetts, telephone calls and email within which they continued to share confidential information with TDK.

91.     During one such call between TDK Zhuhai and Mersen on December 22, 2016, TDK Zhuhai circulated a PowerPoint presentation concerning the meeting marked "strictly confidential."  In that meeting, TDK Zhuhai sought more confidential information from Mersen regarding its testing protocols.  On January 12, 2017 Mersen and TDK Zhuhai conferred again, and again TDK Zhuhai prepared a PowerPoint presentation which it provided to Mersen and marked "strictly confidential."  In the PowerPoint presentation, TDK asked for even more of Mersen's Confidential Technical Information.  By way of non-limiting example, TDK Zhuhai requested information concerning Mersen's Confidential Technical Information and trade secrets.  On January 19, 2017, Mersen and TDK Zhuhai held another conference call where Mersen shared confidential and trade secret information with TDK Zhuhai. During that call, Mersen provided further confidential and trade secret information.  TDK Zhuhai invited Mersen to travel from Massachusetts to Zhuhai, China to continue discussions concerning the

confidential and trade secret features of Mersen's thermally protected MOV design in or about January 2017.

92.     TDK Zhuhai offered to purchase the airfare for Mersen's Massachusetts representatives to travel to China to further share confidential and trade secret information, but Mersen declined.

93.     On information and belief, and unbeknownst to Mersen at the time, TDK Zhuhai began to misappropriate Mersen's confidential and trade secret information to develop competing products while TDK Zhuhai was receiving Mersen confidential and trade secret information.  While engaging in their misappropriation, the TDK entities continued to reach out to Mersen in Massachusetts via in-person meetings, telephone calls and emails at least through June 2018 to obtain confidential and trade secret information and, unbeknownst to Mersen, knowingly misappropriate same.

94.     Representatives of Mersen in Massachusetts, including Mr. Roy Ball, traveled to China and met with TDK Zhuhai in February 2017.

95.     After extensive back and forth regarding TDK Zhuhai's testing processes and potential causes of the MOV failures, Mersen disclosed to TDK the trade secret MOV Requirements and confidential Disconnection Elements in order to assist TDK to solve the failure issues with its products.

96.     As part of Mersen's disclosures, Mersen provided confidential information to TDK Zhuhai regarding its forecasts, launch dates and target MOV pricing, all of which are part of Mersen's Confidential Technical Information.

**Defendants Use Mersen's Confidential Information to Avoid Engaging in their Own R&D Process and Launch Competing Products**

97.     In July 2017, TDK Electronics demanded that Mersen sign a contract with TDK Electronics for the supply of 25mm MOVs.

98.     For several reasons, including unexplained delays at TDK Electronics and TDK Zhuhai, Mersen did not select TDK Electronics as its vendor for the 25mm MOV.

99.     On June 16, 2020, Mersen announced its 25mm thermally protected MOV family of products.

100.    Quickly thereafter, Defendants introduced a new family of products called the MT30.

101.    The MT30 takes advantage of Mersen's Confidential Technical Information, including the MOV Requirements and the Disconnection Elements.

102.    By obtaining and using Mersen's confidential and trade secret information, Defendants avoided the time and expense of conducting their own research and development process associated with the MT30 by using Mersen's skills, expenditures and confidential information to enter the market much fast than they otherwise could have without Mersen's confidential and trade secret information.

103.    Defendants avoided the added time and expense because once Defendants obtained Mersen's confidential information, Defendants could create a thermally protected MOV with characteristics that enable it to compete with Mersen's thermally protected MOV.  Mersen's thermally protected MOV functioned effectively and efficiently because of its key and confidential components, including the MOV Requirements and Disconnection Elements.  A thermally protected MOV can be designed in many different ways, but without these characteristics, the MT30 would not be an effective competitive offering to Mersen's thermally

protected MOV at those customers Mersen worked with in advance of the announcement of the changes to the NEC.

104.    Among other things, the MT30 misappropriates Mersen's confidential information in that it incorporates Mersen's trade secret MOV Requirements and Disconnection Elements, which enables Defendants to compete unfairly by stealing Mersen's market share and customers.

105.    Upon information and belief, TDK Electronics is using the MT30 product to compete directly against Mersen's 25mm thermally protected MOV product at customers disclosed to TDK by Mersen.

106.    The MT30 represents a substantial enhancement over the prior thermally protected MOV products manufactured by TDK Zhuhai and sold by TDK Electronics.

107.    When Mersen disclosed its Confidential Technical Information to Defendants, including its trade secret MOV Requirements, Defendants realized that the Mersen 25mm product had a substantial advantage over any products then manufactured by TDK Zhuhai and sold by TDK Electronics.

108.    TDK Zhuhai also understood that absent incorporating Mersen's key product features, including the trade secret MOV Requirements, Mersen would be awarded business from Mersen's customers before TDK Zhuhai could offer a competitive response.  Based on information and belief, by incorporating confidential and trade secret elements of Mersen's thermally protected MOV product, and offering that product for sale to the very same customers Mersen confidentially disclosed it was targeting, Defendants were able to improperly and unfairly steal Mersen's business.

109.    Absent possession and use of Mersen's confidential and trade secret information, Defendants could not have had a market-ready 25mm thermally protected MOV product capable of effectively competing with Mersen's thermally protected MOV.

110.    Defendants are misusing Mersen's confidential and trade secret information to compete unfairly against Mersen for business opportunities that Mersen confidentially disclosed to Defendants and that TDK would not otherwise have but for their misappropriation.

111.    Prior to TDK's public announcement of its MT30, TDK contacted Mersen to notify Mersen that TDK would be competing against Mersen for 25mm thermally protected MOV business.

112.    Mersen expressed its concern regarding the MT30 products that TDK intended to offer in direct competition against Mersen.

113.    In response, TDK indicated that if Mersen wished to protect its confidential and trade secret information, it should have requested that TDK execute a non-disclosure agreement (not recognizing that such an agreement had in fact already been signed).

114.    TDK's communications with Mersen regarding its MT30 is tantamount to an admission that TDK misappropriated Mersen's confidential and trade secret information.

115.    In anticipation of Defendants' unfair competition, Mersen has given customers price discounts that exceed $4,000,000.

116.    The business opportunities that Defendants plan to take from Mersen with the MT30 are exceedingly voluminous.

117.    As a result of TDK's misappropriation of Mersen's confidential information and trade secrets, Mersen has suffered, and will continue to suffer, economic harm in Massachusetts.

4858-0901-1810, v. 8

118.     In addition, Defendants' misappropriation of Mersen's confidential and trade secret information have caused and will continue to cause Mersen irreparable harm that is not adequately remedied at law and that requires permanent injunctive relief preventing actual, continued or threatened disclosure of Mersen's confidential and trade secret information.

119.     Absent an injunction, Defendants' misappropriation will erode Mersen's leadership role with respect to thermally protected MOV technology and deny Mersen opportunities to collaborate with its customers and potential customers on new product development by those customers.

120.     Absent an injunction, Defendants' misappropriation will erode Mersen's market share, the effects of which will likely be difficult to calculate with certainty and may never be recovered.

## Mersen Commences Litigation in New York

121.     As a result of Defendants' breach of the NDA, Mersen commenced litigation in New York state court on January 27, 2021 pursuant to the NDA's forum selection clause, which TDK removed to federal court.

122.     The SDNY Litigation alleged breach of contract and unfair competition against both TDK Electronics and TDK Zhuhai, and unjust enrichment pleaded in the alternative against TDK Zhuhai.

123.     In its Answer to the First Amended Complaint, TDK Electronics claimed that it "developed its MT30 and all other products independently and without use of any confidential information from Plaintiff." To test this defense, Mersen sought all documents from TDK related to its development, testing, and design of TDK's competing products.

124.   After asserting generic general objections, the parties conferred and TDK Electronics and TDK Zhuhai agreed to produce all documents responsive to Mersen's discovery requests.

125.   In January 2023 and thereafter, TDK represented to Mersen and the Court that document production was substantially complete.  Mersen took and defended depositions based on that representation.

126.   On the last day of discovery in the SDNY litigation, TDK Electronics and TDK Zhuhai produced Dr. Wen Yang, a TDK Zhuhai employee, as the 30(b)(6) witness for *both* companies.  That deposition revealed that TDK had intentionally withheld material responsive documents.

127.   On April 12, at a conference before the Honorable Mary Kay Vyskocil, Mersen raised the issue of TDK's concealment of discovery in the SDNY Litigation.  Judge Vykocil indicated that the proper procedural vehicle to address TDK's misconduct would be a motion for sanctions.

128.   On April 19, 2023, during a meet and confer among counsel in the SDNY Litigation, Mersen's counsel informed TDK's counsel that Mersen would be seeking sanctions against TDK Electronics and TDK Zhuhai based on their egregious discovery violations in the SDNY Litigation.

**The Pricing Freeze and TDK's Subsequent Retaliatory Pricing Scheme**

129.   In 2022, TDK Electronics and Mersen agreed to an "across the board" pricing freeze of 5% until January 1, 2024 on all TDK products purchased by Mersen.  Specifically, the pricing freeze was negotiated by Bob Riding—a TDK Electronics representative based out of

North Easton, Massachusetts—and Tom Connelly—a Mersen representative also based out of Massachusetts.

130.    The pricing freeze was negotiated within Massachusetts.

131.    On April 25, 2023, six days after Mersen had informed TDK that Mersen intended to seek sanctions, TDK's Bob Riding contacted Mersen's Tom Connolly seeking a call to discuss an immediate double digit price increase.

132.    On April 26, 2023, Mersen filed a formal request in the SDNY Litigation for leave to move for sanctions resulting from TDK's egregious and willful discovery violations.

133.    A few hours later, Bob Riding emailed Tom Connolly informing Mersen that "all existing or new orders from Mersen Newburyport, MA for deliveries leaving our Zhuhai factory[2] from May 1, 2023 onwards will be subject to" an 18% price increase for TDK's strap varistors.

134.    Up until Mersen's request for sanctions in the SDNY litigation, the course of conduct for the parties had been consistent with the 2022 agreed upon price freeze.

135.    Upon information and belief, TDK Electronics, in concert with TDK Zhuhai, raised the price for Mersen by 18% in retaliation to Mersen's request for sanctions. On May 3, 2023, Bob Riding informed Tom Connolly of a further price increase for all products that Mersen USA EP Corp purchases from TDK.

136.    Upon information and belief, TDK Electronics, in concert with TDK Zhuhai, raised the price of all products purchased by Mersen in retaliation to Mersen's request for sanctions resulting from TDK's egregious and willful discovery violations in the SDNY Litigation.

---

[2] Bob Riding is employed by TDK Electronics, yet refers to TDK Zhuhai as "our factory."

137.    As a result of TDK's retaliatory pricing scheme, Mersen has suffered, and will continue to suffer, economic damages in Massachusetts.

138.    The products subject to the retaliatory pricing scheme are ordered by Tom Connolly from Mersen in Massachusetts.

## COUNT I
## VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836 *ET SEQ.*)

139.    Mersen repeats and realleges all of the allegations in all of the paragraphs above as though fully set forth herein.

140.    The DTSA creates a private right of action for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."

141.    Mersen is the owner of all rights in its trade secret MOV Requirements.

142.    Mersen has taken significant steps to maintain the secrecy of its trade secret MOV Requirements.

143.    The trade secret MOV Requirements derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the trade secret MOV Requirements.

144.    As further detailed above, Defendants misappropriated by improper means Mersen's trade secrets comprising its trade secret MOV Requirements and has used Mersen's trade secrets in interstate and foreign commerce.

145.    TDK Electronics is a party to the NDA and was fully aware that the trade secret MOV Requirements could not be used in any products developed by TDK or otherwise disclosed to any further parties.

146.     TDK Zhuhai was fully aware that its receipt of the trade secret MOV Requirements was conditioned upon maintaining the confidentiality of the trade secret MOV Requirements.  At the very least, TDK Zhuhai was aware that its receipt of the trade secret MOV Requirements was derived from or through TDK Electronics and TDK Electronics owed Mersen a duty to maintain the secrecy of the trade secret MOV Requirements.

147.     Subject to strict confidentiality obligations, Mersen provided TDK Electronics and TDK Zhuhai with the trade secret MOV Requirements for the sole purpose that TDK Zhuhai could resolve quality problems with the MOV product that TDK Zhuhai manufactured.

148.     TDK Electronics and TDK Zhuhai misappropriated Mersen's confidential MOV Requirements in order to make improvements in the manufacturing process and performance characteristics of Defendants' MOV products which were incorporated into Defendants competing products.

149.     In breach of their confidentiality obligations, TDK Electronics and TDK Zhuhai misappropriated Mersen's MOV Requirements by participating in and facilitating the development and manufacturing of the competing products, using the trade secret MOV Requirements.  In addition, TDK's misappropriation has caused and will continue to cause Mersen damages in an amount to be determined at trial.

150.     On information and belief, TDK's misappropriation of Mersen's trade secret MOV Requirements was willful and malicious.

## COUNT II
## VIOLATION OF M.G.L. CHAPTER 93A

151.     Mersen repeats and realleges all of the allegations in all of the paragraphs above as though fully set forth herein.

152.     Mersen, TDK Electronics and TDK Zhuhai are engaged in trade or commerce for purposes of M.G.L. c. 93A, § 11.

153.     TDK's misappropriation of Mersen's confidential and trade secret information for the purpose of competing unfairly with Mersen in Massachusetts and stealing Mersen's Massachusetts customers constitutes violations of Sections 2 and 11 of Chapter 93A.

154.     TDK's retaliatory pricing scheme as alleged above was designed by TDK to dissuade Mersen from pursuing it motion for sanctions in the SDNY Litigation resulting from TDK's egregious discovery violations, and to undermine Mersen's ability to compete with TDK in Massachusetts, and constitutes violations of Sections 2 and 11 of Chapter 93A.

155.     Upon information and belief, in response to not being selected by Mersen to supply 25mm MOV products to Mersen, Defendants decided to compete against Mersen by misappropriating its confidential and trade secret information.  In so doing, Defendants gained an unfair advantage which allowed them to significantly accelerate the production and marketing of thermally protected MOV products that directly compete with Mersen's products.

156.     Upon information and belief, Defendants willfully and in bad faith ignored the confidentiality obligations they owed to Mersen.  In particular, when Defendants learned that Mersen would not be purchasing 25mm MOVs from TDK Electronics, Defendants decided to continue to receive Mersen's confidential information and simultaneously use that information to prepare to unfairly compete directly against Mersen in Massachusetts.

157.     TDK Electronics and TDK Zhuhai's unfair methods of competition and unfair or deceptive trade practices occurred primarily and substantially in the Commonwealth of Massachusetts.

158.    TDK Electronics' and TDK Zhuhai's use or employment of unfair methods of competition and unfair or deceptive trade practices are a willful or knowing violation of Section 2 of Chapter 93A.

159.    As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive trade practices, Mersen has been forced to offer customers price discounts exceeding $4,000,000, will continue to suffer this and other economic harm, and is entitled to compensatory and other damages in an amount to be determined at trial.  These losses are causally connected to the unfair and deceptive methods, acts, and practices of Defendants.

160.    Defendants' actions complained of herein have caused and will continue to cause Mersen irreparable harm that is not adequately remedied at law and that requires permanent injunctive relief preventing actual, continued or threatened unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mersen USA EP Corp. requests a judgment in its favor and against Defendants, and requests that this Court enter judgment as follows:

i.      Defendants' misappropriation of Mersen's trade secrets violated the Defend Trade Secrets Act, 18 U.S.C § 1836 *et seq*.;

ii.     Defendants' misappropriation of Mersen's trade secrets was willful and malicious;

iii.    Defendants engaged in unfair methods of competition and unfair or deceptive trade practices in violation of Sections 2 and 11 of Chapter 93A of the Massachusetts General Laws;

iv.     Defendants' unfair methods of competition and unfair or deceptive trade practices are a willful or knowing violation of Section 2 of Chapter 93A of the Massachusetts General Laws;

4858-0901-1810, v. 8

v.      Awarding Mersen's actual damages for Defendants; violations of the DTSA and Chapter 93A;

vi.     Awarding damages to Mersen for any unjust enrichment caused by Defendants' misappropriation of Mersen's trade secrets that is not addressed in computing damages for actual loss pursuant to 18 U.S.C. § 1836(b)(3)(B);

vii.    Awarding Mersen up to treble damages and reimbursement of its attorneys' fees pursuant to M.G.L. c. 93A § 11;

viii.   Awarding Mersen exemplary damages and attorney fees for Defendants' willful and malicious misappropriation pursuant to 18 U.S.C. § 1836(b)(3)(C) and (D);

ix.     A permanent injunction enjoining Defendants from marketing and selling any products incorporating Mersen's confidential or trade secret information and from using, copying, retaining, or further disclosing any of Mersen's confidential and trade secret information;

x.      Ordering Defendants to deliver to Mersen for destruction at Defendants' expense all products containing, incorporating or derived from Mersen's confidential and trade secret information.

xi.     Ordering Defendants to return all confidential and trade secret information to Mersen and confirm in writing, verified under the pains and penalties of perjury, that all copies have been destroyed, and outlining with specificity exactly what actions were taken by Defendants to ensure the return and destruction of such information, including identifying the files where all such information was located and the custodians of such files.

xii.    An accounting of all sales of Defendants' products incorporating, using, or derived from Mersen's confidential and trade secret information; and

xiii.   All further and additional relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable as of right by a jury.

Respectfully submitted,

MERSEN USA EP CORP.,
Through its Counsel,

*/s/ Andrew T. O'Connor*

Dated: May 23, 2023
Andrew T. O'Connor (BBO# 664811)
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, MA 02110
Phone:  (617) 574-4153
Fax:  617-574-4153
aoconnor@goulstonstorrs.com

Nora A. Saunders (BBO# 710305)
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, MA 02110
Phone (617) 574-0524
Fax (617) 574-4112
nsaunders@goulstonstorrs.com

Nicholas Cutaia (*pro hac vice forthcoming*)
Isabel P. Sukholitsky (*pro hac vice forthcoming*)
GOULSTON & STORRS PC
885 Third Avenue, 18th Floor
New York, NY 10022
Ph: (212) 878-6900 / Fax: (212) 878-6911
ncutaia@goulstonstorrs.com
isukholitsky@goulstonstorrs.com

4858-0901-1810, v. 8

Thomas E. Bejin (*Pro Hac Vice forthcoming*)
Mark C. St. Amour (*Pro Hac Vice forthcoming*)
William K. Broman (*Pro Hac Vice forthcoming*)
BEJIN BIENEMAN PLC
2000 Town Center, Suite 800
Southfield, MI 48075
Ph: (313) 528-4882 / Fax: (313) 528-6923
bejin@b2iplaw.com
stamour@b2iplaw.com
broman@b2iplaw.com

4858-0901-1810, v. 8